IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| WESTFIELD INSURANCE COMPANY, | : | |
|---|---|---|
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| LUCIO GRANESE, et al., | : | No. 10-795 |
| Defendants. | : | |

MEMORANDUM

Schiller, J.                                                                                                      February 4, 2011

On July 2, 2008, Lucio Granese assaulted his neighbor, Anthony Genuardi, causing Genuardi serious injuries. Granese pled guilty to simple assault in July of 2009. Genuardi and his wife, Nella, subsequently sued Granese for assault and battery in the Montgomery County Court of Common Pleas. Granese tendered his defense to his insurance provider, Plaintiff Westfield Insurance Company ("Westfield"). Westfield seeks a declaratory judgment that it has no obligation to defend or indemnify Granese in connection with the state-court lawsuit. Currently before the Court is Westfield's Motion for Summary Judgment. The motion is granted for the reasons that follow.

I.      BACKGROUND

   A.      Granese's Assault on Genuardi

Mr. Genuardi and Granese, next-door neighbors, have a history of "bad blood." (Pl's Mot. for Summ. J. Ex. E [Genuardi Dep.] 48-59.) On the afternoon of July 2, 2008, Genuardi had just returned from a shopping trip with his wife when he spotted Granese getting out of his vehicle. (*Id.*

1

at 64-65). After the men exchanged words, Granese charged Genuardi "like a mad man." (*Id.* at 65.) Granese hit Genuardi in the head twice. (*Id.* at 65-69, 73-77.) With the first blow, Granese "knocked [Genuardi's] glasses off" and Genuardi fell down. (*Id.* at 77.) The second blow left Genuardi blind in his left eye. (*Id.* at 32.)

Granese was arrested and charged with aggravated assault, simple assault, and recklessly endangering another person. (Pl's Mot. for Summ. J. Ex. F [Criminal Compl. dated July 16, 2008].) On April 17, 2009, Granese pled guilty to the first count of simple assault and was subsequently sentenced to eighteen to twenty-four months' imprisonment. (*Id.* Exs. G [Guilty Plea Agreement], H [Sentencing Tr.].) At the sentencing hearing, Genuardi described the July 2, 2008 incident:

> The first time he hit me, I fell down. And there is a fence where I fell, and I grabbed on to the fence and picked myself up. In the meantime, my wife came out, and she heard him hollering. She said what's going on out here. And then she said to me, where's your glasses . . . . I turned my head to answer him. I said, I don't know. And he hit me the second time. I fell down and started to get up. My wife said, don't get up. Part of your eye is coming out. I just laid there until the guys with the ambulance came.

(Sentencing Tr. 6-7.)

### B. The Underlying Genuardi Litigation

In June of 2009, the Genuardis filed a lawsuit against Granese in the Montgomery County Court of Common Pleas. (Pl's Mot. for Summ. J. Ex. D [Civil Compl.].) The Complaint alleges that on July 2, 2008, Granese struck Genuardi on the head without provocation. (*Id.* ¶¶ 3-5.) The Complaint recounts that "Anthony Genuardi has been caused to suffer serious injuries, including abrasions, contusions, shock to his nervous system, scarring, and disfigurement." (*Id.* ¶ 6.) Nella Genuardi alleges that she has incurred substantial expenses to take care of Anthony, and "has been deprived of the society, companionship, assistance, and consortium of her husband." (*Id.* ¶¶ 11-13.)

2

The Civil Cover Sheet attached to the complaint indicates that the case is an "intentional tort" with the subcategory of "assault/battery." (Pl's Mot. for Summ. J. Ex. D [Civil Cover Sheet].)

### C. The Westfield Insurance Policy

Westfield issued a homeowner's insurance policy to Lucio and Barbara Granese, with a policy period from April 13, 2008 to April 13, 2009. (*Id.* Ex. J [Homeowner's Policy Declaration Page].) The policy's personal liability section provides:

> If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage caused by occurrence to which this coverage applies, we will: (1) Pay up to our limit of liabilty for the damages for which the insured is legally liable . . . and; (2) Provide a defense at our expense . . . even if the suit is groundless, false, or fraudulent.

(*Id.* Ex. K [Insurance Policy] 18.) The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in: (a) bodily injury; or (b) property damage." (*Id.* at 2.) "Bodily injury" is further defined as "bodily harm, sickness or disease, including required care, loss of services, and death or results." (*Id.* at 1.) The policy excludes "Expected or Intended Injur[ies]," defined as: "bodily injury or property damage which is expected or intended by an insured, even if the resulting bodily injury or property damage (a) is of a different kind, quality or degree than initially expected or intended; or (b) is sustained by a different person . . . than initially expected or intended." (*Id.* at 20.)

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the admissible evidence fails to demonstrate a dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ.

P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). When the moving party does not bear the burden of persuasion at trial, it may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry its burden of persuasion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thereafter, the nonmoving party demonstrates a genuine issue of material fact if sufficient evidence is provided to allow a reasonable finder of fact to find for the nonmoving party at trial. *Anderson*, 477 U.S. at 248. In reviewing the record, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994). A court may not make credibility determinations or weigh the evidence in making its determination. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002).

## III. DISCUSSION

### A. Granese's Assault is Not a Covered "Occurrence" Under the Policy

The interpretation of an insurance contract is a matter of law, generally to be performed by the Court. *D'Adamo v. Erie Ins. Exch.*, 4 A.3d 1090, 1096 (Pa. Super. Ct. 2010). The goal of the Court's interpretation is "to ascertain the intent of the parties as manifested by the language of the written instrument." *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 606, 735 A.2d 100, 106 (Pa. 1999).

Westfield argues that because Granese pled guilty to assault, the events of July 2, 2008 cannot constitute an "accident" and hence an "occurrence" under the policy. The Genuardis counter that despite Granese's conviction, a genuine issue of material fact exists as to whether the assault

4

was an "accident" because "the most that can be said of Granese's conviction is that it constitutes evidence of at least reckless conduct." (Defs.' Opp'n to Mot. for Summ. J. 5.)

An insurer's obligation to defend only arises when the underlying lawsuit falls within the policy's coverage. *Phila. Contributionship Ins. Co. v. Shapiro,* 798 A.2d 781, 786 (Pa. Super. Ct. 2002). Therefore, before the Court can decide whether the insurance policy requires Westfield to defend and indemnify Granese, it is necessary to determine the scope of his coverage. *See id.*

In Pennsylvania, a criminal conviction collaterally estops a defendant from denying his acts in a later civil trial where the party "had adequate incentive to contest the criminal charge and an adequate forum in which to litigate the matter." *Hawkins v. Unemployment Comp. Bd. of Review*, 695 A.2d 963, 966 (Pa. Commw. Ct. 1997); *see Folino v. Young*, 568 A.2d 171, 172 (Pa. 1990). "The potential loss of substantial property or of liberty provides adequate incentive to contest a criminal charge." *Hawkins*, 695 A.2d at 963.

Gransese pled guilty to simple assault, defined as "attempt[ing] to cause or intentionally, knowingly or recklessly caus[ing] bodily injury to another." 18 Pa. Cons. Stat. § 2701(A)(1). Despite the conviction, the Genuardis have submitted an affidavit from Granese in which he states that he acted in self-defense, and that "at no time did I have any intention of harming Mr. Genuardi." (Defs.' Opp'n to Mot. for Summ. J. Ex. O [Granese Aff.].) The Genuardis argue that the conviction may encompass purportedly "accidental" conduct under the policy because of the inclusion of the term "recklessly" in the offense definition.

Undefined terms of common usage in an insurance policy are to be construed "in their natural, plain, and ordinary sense, and a court may inform its understanding of these terms by considering their dictionary definitions." *Wall Rose Mut. Ins. Co. v. Manross*, 939 A.2d 958, 962

5

(Pa. Super. Ct. 2007). "Accident," which is undefined in the policy, refers to "an unintended and unforseen injurious occurrence; something that does not occur in the usual course of events or that could not be reasonably anticipated." Black's Law Dictionary 16 (9th ed. 2009). Even accepting Defendants' contention that Granese's actions were reckless, it is impossible to square such conduct with an "accident." A person acts "recklessly" if he "consciously disregards a substantial and unjustifiable risk" of injury to others. 18 Pa. Cons. Stat. § 302(b)(3). A "conscious disregard," implies a heightened level of awareness and is inconsistent with the ordinary definition of "accident" as an "unintended and unforseen . . . occurrence" or "something . . . that could not reasonably be anticipated."

Granese, facing jail time for his crime, had adequate incentive to contest the criminal charges against him. Accordingly, Defendants are collaterally estopped from claiming that the assault was an "accident" and a covered "occurrence" under the policy. *See Hawkins*, 695 A.2d at 963; *see also Colony Ins. Co. v. Mid-Atlantic Youth Servs. Corp.*, Civ. A. No. 09-1773, 2010 WL 817703, at *5 (M.D. Pa. Mar. 9, 2010) ("Reckless . . . activities . . .cannot be considered 'accidents' under the plain language of an occurrence-based insurance policy."); *Legion Indemnification Co. v. Carestate Ambulance Inc.*, 152 F. Supp. 2d 707, 716-718 (E.D. Pa. 2001) (holding that reckless or grossly negligent action and civil conspiracy are not covered "occurrences" in policy that defines "occurrence" as an "accident").

    **B**.    **Westfield Has No Duty to Defend or Indemnify Granese Because the Underlying Complaint Only Alleges Intentional Acts**

Under Pennsylvania law, "it is well established that an insurer's duties under an insurance policy are triggered by the language of the complaint against the insured." *Kvaerner Metals Div. of*

*Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 896 (Pa. 2006). The underlying state-court complaint repeatedly describes Granese's actions as intentional. It alleges that on July 2, 2008, Granese "used his hand to strike [Genuardi] above his head," and that Granese's act was "unprovoked." (Civil Compl. ¶¶ 3-5.) There are no allegations that Granese's conduct was negligent or accidental. The insurance policy provides that Westfield will provide a defense for Granese "[i]f a . . . suit is brought against [the] insured for damages because of bodily injury . . . caused by occurrence to which this coverage applies." (Ins. Policy 18.) The Genuardis' lawsuit does not allege an "occurrence," or an accident, but rather intentional conduct. Accordingly, Westfield has no duty to defend Granese in the underlying lawsuit.

Since the duty to indemnify is narrower than the duty to defend, it follows that where there is no duty to defend, there is no duty to indemnify. *See Lucker Mfg. v. Home Ins. Co.,* 23 F.3d 808, 821 (3d Cir. 1994). Therefore, as Westfield does not have a duty to defend Granese in the underlying lawsuit, it likewise does not have a duty to indemnify him.

## IV. CONCLUSION

Granese was convicted of an assault on Genuardi and sued for assault and battery in state court. Under the terms of the policy and the averments in the Genuardis' Complaint, Westfield does not have a duty to defend or indemnify Granese. An appropriate Order will be docketed separately.